**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**CHRISTINE MARTIN,**
**on behalf of RTDR, a minor,**                                                                      **Plaintiff**

**v.**                                          **Case No. 4:12-cv-00422 KGB**

**CAROLYN W. COLVIN,**
**Acting Commissioner,**
**Social Security Administration**[1]                                                                 **Defendant**

**OPINION AND ORDER**

      Plaintiff, Christine Martin, appeals the final decision of the Commissioner of the Social Security Administration to deny her claim for Supplemental Security Income ("SSI") on behalf of her minor son, RTDR ("Claimant").[2] Both parties have filed appeal briefs, and the case is ready for decision.

      The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g), 1383(c)(3); *Moore ex rel. Moore v. Barnhart*, 413 F.3d 718, 721 (8th Cir. 2005); *see Young ex rel. Trice v. Shalala*, 52 F.3d 200, 201-02 (8th Cir. 1995)(substantial evidence review in child benefits case). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore ex rel. Moore v. Barnhart*, 413 F.3d at 721. The Commissioner's decision cannot be based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997).

---

    [1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. She is therefore substituted for Michael J. Astrue pursuant to Federal Rule of Civil Procedure 25(d).

    [2] Claimant is a minor. (Tr. 13, 29, 109) In accordance with Federal Rule of Civil Procedure 5.2(a), only his initials should be used in Court filings.

In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

The Commissioner found Claimant not disabled within the meaning of the Social Security Act. The only issue before this Court is whether the Commissioner's decision that Claimant was not disabled within the meaning of the Act is supported by substantial evidence.

> An individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i) (1996).

After conducting an administrative hearing at which Ms. Martin testified, the Administrative Law Judge ("ALJ")[3] concluded that Claimant had not been under a disability within the meaning of the Social Security Act at any time through February 7, 2011, the date of his decision. (Tr. 22) On May 11, 2012, the Appeals Council received and considered additional evidence and then denied Ms. Martin's request for a review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. 1-6)

Ms. Martin then filed her complaint initiating this appeal (Dkt. No. 1). After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

---

[3] The Hon. Eliaser Chaparro was the ALJ.

At the time of the second administrative hearing, Claimant was nine years old and a student in the fourth grade.[4]  (Tr. 29)  In determining whether an SSI claimant under the age of 18 is under a disability, a three-step sequential evaluation process is used which is comparable to the five-step sequential evaluation process utilized for adults.  20 C.F.R. § 416.924(a) (2010).

The first step is a determination of whether the child is engaged in substantial gainful activity.  20 C.F.R. § 416.924(b) (2010).  If so, benefits are denied; if not, the evaluation continues to the next step.

The second step involves a determination of whether the impairment or combination of impairments is severe, *i.e.*, more than a slight abnormality that causes no more than minimal functional limitations.  20 C.F.R. § 416.924(c) (2010).  If not, benefits are denied; if so, the evaluation continues.

The third step involves a determination of whether the child has impairment(s) that meet, medically equal, or functionally equal in severity a Listed impairment.  20 C.F.R. § 416.924(d) (2010).  If so, and if the duration requirement is met, benefits are awarded; if not, benefits are denied.

The ALJ found Claimant was a school-age child at all times relevant to this decision.  (Tr. 13)  He found Claimant had never engaged in substantial gainful activity.  *Id.*  He determined that Claimant did have "severe" impairments, attention deficit hyperactivity disorder, a learning disorder (developmental reading) and a depressive order, not otherwise specified.  *Id.*  The ALJ found Claimant did not have any impairment or combination of impairments that met or medically

---

[4] There had been a prior hearing in this case.  (Tr. 43-54)  There had also been previous applications.  (Tr. 28)

equaled a Listing or that functionally equaled a Listed impairment. *Id.* Consequently, he found Claimant was not disabled. (Tr. 22)

Ms. Martin raises the following issues on appeal: (1) whether the ALJ properly considered the combined effects of Claimant's impairments; (2) whether the ALJ properly found Claimant had "less than marked" limitations in acquiring and using information; (3) whether the ALJ properly found Claimant had "less than marked" limitation in interacting and relating with others; (4) whether the ALJ erred by not mentioning Claimant's Global Assessment of Functioning ("GAF") scores; and (5) whether the ALJ erred in not finding that Claimant met Listing 112.04.

### 1. Consideration of the Combined Effects of Claimant's Impairments

First, Ms. Martin argues the ALJ erred by not considering the combined effects of Claimant's attention deficit hyperactivity disorder and oppositional defiant behavior (Dkt. No. 7, at 3-4). The ALJ specified that he considered "the complete medical history." (Tr. 10) He considered "all the evidence" in reaching his decision. *Id.* He repeatedly referred to an impairment or combination of impairments. (Tr. 11, 13, 22) He specifically recognized his obligation to consider "the combined effects of all medically determinable impairments, even those that are not severe." *Id.* He reiterated that requirement when discussing functional equivalence. *Id.* He discussed the "interactive and cumulative effects of the impairment(s)" in discussing the meaning of "marked and extreme." (Tr. 12) He considered "all of the relevant evidence in the case record." (Tr. 13) He considered the "whole child" in making his findings regarding functional equivalence. *Id.* He emphasized he assessed "the interactive and cumulative effects of all of the claimant's medically determinable impairment(s), including any impairments that are not severe." (Tr. 14) He considered "all symptoms." *Id.* In making credibility determinations, he considered "the entire case record." (Tr. 15)

A careful reading of the ALJ's thoughtful opinion leads to a conclusion that he properly considered the evidence in combination.

The next two arguments deal with the issue of functional equivalence.  Since Claimant had "severe" impairments, but they did not meet or medically equal a Listing, it was necessary for the ALJ to determine if the impairments functionally equaled a Listing.  20 C.F.R. § 416.926a(a) (2010).

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (the Welfare Reform Act), P.L. 104-193, 110 Stat. 2105 (codified in scattered sections of 42 U.S.C.), required implementing regulations.  One significant change that the final regulations made from the interim final regulations is the manner of determining functional equivalence.  There is now a single method of evaluating functional equivalence based only on domains of functioning.  Domains are broad areas of functioning intended to capture all of what a child can or cannot do.  Social Security Ruling 09-2p, *1.  Under the regulation, an impairment is functionally equivalent to a Listing when the impairment results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning.  20 C.F.R. § 416.926a(a) (2010).

A "marked" limitation in a domain seriously interferes with a child's ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(2) (2010).  It also means a limitation that is "more than moderate" but "less than extreme."  *Id.*  It is the equivalent of functioning expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.  *Id.*

An "extreme" limitation in a domain very seriously interferes with a child's ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(3) (2010).  "Extreme" limitation also means a limitation that is "more than marked."  *Id.*  It is the rating

5

given to the worst limitations. *Id.* It is the equivalent of functioning expected on standardized testing with scores that are at least three standard deviations below the mean. *Id.*

The domains of functioning are:

(1) Acquiring and using information;

(2) Attending and completing tasks;

(3) Interacting and relating with others;

(4) Moving about and manipulating objects;

(5) Caring for yourself; and

(6) Health and physical well-being.[5]

20 C.F.R. § 416.926a(b)(1)(i-vi) (2001) *(2003) (2004) (2005) (2006) (2007) (2008) (2009) (2010). These domains are described in greater detail, with examples, in the regulations. 20 C.F.R. § 416.926a(g)-(l) (2010).

### 2. Acquiring and Using Information

Second, Ms. Martin contends the ALJ erred in finding that Claimant had "less than marked" limitation of functioning in the domain of acquiring and using information (Dkt. No. 7, at 6-7).

> (g) *Acquiring and using information.* In this domain, we consider how well you acquire or learn information, and how well you use the information you have learned.
>
> (1) *General.* (i) Learning and thinking begin at birth. You learn as you explore the world through sight, sound, taste, touch, and smell. As you play, you acquire concepts and learn that people, things, and activities have names. This lets you understand symbols, which prepares you to use language for learning. Using the concepts and symbols you have acquired through play and learning

---

[5] There are additional definitions of "marked" and "extreme" for this domain. 20 C.F.R. §§ 416.926a(e)(2)(iv) and (e)(3)(iv) (2009)(2010).

experiences, you should be able to learn to read, write, do arithmetic, and understand and use new information.

      (ii) Thinking is the application or use of information you have learned. It involves being able to perceive relationships, reason, and make logical choices. People think in different ways. When you think in pictures, you may solve a problem by watching and imitating what another person does. When you think in words, you may solve a problem by using language to talk your way through it. You must also be able to use language to think about the world and to understand others and express yourself; e.g., to follow directions, ask for information, or explain something.

      (2) *Age group descriptors.*

      . . . .

      (iv) *School-age children (age 6 to attainment of age 12).* When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

      . . . .

      (3) *Examples of limited functioning in acquiring and using information.* The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; e.g., an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.

      (i)    You do not demonstrate understanding of words about space, size, or time; e.g., in/under, big/little, morning/night.
      (ii)   You cannot rhyme words or the sounds in words.

        (iii)    You have difficulty recalling important things you learned[ ]in school yesterday.
        (iv)    You have difficulty solving mathematics questions or computing arithmetic answers.
        (v)    You talk only in short, simple sentences and have difficulty explaining what you mean.

20 C.F.R. § 416.926a (2010).

In reaching his decision, the ALJ considered Claimant was of low average intelligence and worked below grade level in reading and spelling. (Tr. 18) He also noted that, since being placed on medication and receiving special education assistance, Claimant had not had any failing grades. *Id.* An annual report revealed that Claimant had shown progress in reading and writing and his spelling skills had improved. (Tr. 244) His teachers reported he enjoyed reading non-fiction books. (Tr. 246) Substantial evidence supports the ALJ's conclusion that Claimant had "less than marked" limitation in the domain of acquiring and using information.

    **3.**    **Interacting and Relating with Others**

Third, Ms. Martin argues that Claimant had "marked" difficulty in interacting and relating with others (Dkt. No. 7, at 7). The ALJ found only "less than marked" limitation in the domain. (Tr. 19)

    (i) *Interacting and relating with others.* In this domain, we consider how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others.

    (1) *General.* (i) Interacting means initiating and responding to exchanges with other people, for practical or social purposes. You interact with others by using facial expressions, gestures, actions, or words. You may interact with another person only once, as when asking a stranger for directions, or many times, as when describing your day at school to your parents. You may interact with people one-at-a-time, as when you are listening to another student in the hallway at school, or in groups, as when you are playing with others.

(ii) Relating to other people means forming intimate relationships with family members and with friends who are your age, and sustaining them over time. You may relate to individuals, such as your siblings, parents or best friend, or to groups, such as other children in childcare, your friends in school, teammates in sports activities, or people in your neighborhood.

(iii) Interacting and relating require you to respond appropriately to a variety of emotional and behavioral cues. You must be able to speak intelligibly and fluently so that others can understand you; participate in verbal turn[]taking and nonverbal exchanges; consider others' feelings and points of view; follow social rules for interaction and conversation; and respond to others appropriately and meaningfully.

(iv) Your activities at home or school or in your community may involve playing, learning, and working cooperatively with other children, one-at-a-time or in groups; joining voluntarily in activities with the other children in your school or community; and responding to persons in authority (e.g., your parent, teacher, bus driver, coach, or employer).

(2) *Age group descriptors.*

. . . .

(iv) *School-age children (age 6 to attainment of age 12).* When you enter school, you should be able to develop more lasting friendships with children who are your age. You should begin to understand how to work in groups to create projects and solve problems. You should have an increasing ability to understand another's point of view and to tolerate differences. You should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

. . . .

(3) *Examples of limited functioning in interacting and relating with others.* The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; e.g., an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.

   (i)  You do not reach out to be picked up and held by your caregiver.
   (ii)  You have no close friends, or your friends are all older or younger than you.
   (iii)  You avoid or withdraw from people you know, or you are overly anxious or fearful of meeting new people or trying new experiences.
   (iv)  You have difficulty playing games or sports with rules.
   (v)  You have difficulty communicating with others; e.g., in using verbal and nonverbal skills to express yourself, carrying on a conversation, or in asking others for assistance.
   (vi)  You have difficulty speaking intelligibly or with adequate fluency.

20 C.F.R. § 416.926a (2010).

  In a Function Report, Ms. Martin indicated Claimant had friends his own age and could make new friends. (Tr. 120) According to Ms. Martin, his medication helped his attention deficit hyperactivity disorder "a lot." (Tr. 200) His teacher observed no limitation of functioning in this domain; Claimant appeared to be age-appropriate in his functioning. (Tr. 140) She indicated that she could understand "almost all"[6] of Claimant's speech on the first attempt. (Tr. 141) Substantial evidence supports the ALJ's determination that Claimant had "less than marked" limitation of functioning in the domain of interacting and relating with others.

  **4.**  **Consideration of GAF Scores**

  Fourth, Ms. Martin contends the ALJ erred in not considering his low GAF[7] score (Dkt. No. 7, at 7-8). Contrary to Ms. Martin's suggestion, the ALJ noted Claimant's GAF score of 60 assigned by Ann Marie Prather, Ph.D., who performed a mental evaluation of him in October

---

  [6] This is the highest category given on the question. (Tr. 141)

  [7] Global Assessment of Functioning. *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed., Text Revision 2000) (DSM-IV-TR). The GAF Scale is the fifth axis of the multiaxial assessment. *Id.* 32. It is a subjective report of the clinician's judgment of the individual's overall level of functioning with respect to psychological, social and occupational functioning. *Id.*

2009. (Tr. 15, 17) Ms. Martin's argument seeks to place too much importance on the GAF score.[8]

The GAF, by itself, does not rise to the level of a medical opinion that the ALJ must address. *See Jones v. Astrue*, 619 F.3d 963, 973-74 & n.4 (8th Cir. 2010). It is no more significant than any of the other axes of the multiaxial assessment and, arguably, of less significance than Axis I or II. To hold otherwise would overemphasize its importance. While it may be tempting to try to measure mental impairments on a numerical scale, mental impairments are seldom that easy to characterize. DSM-IV-TR cautions:

> DSM-IV is a classification of mental disorders that was developed for use in clinical, educational, and research settings. The diagnostic categories, criteria, and textual descriptions are meant to be employed by individuals with appropriate clinical training and experience in diagnosis. It is important that DSM-IV not be applied mechanically by untrained individuals. The specific diagnostic criteria included in DSM-IV are meant to serve as guidelines to be informed by clinical judgment and are not meant to be used in a cookbook fashion.

*Id.* xxxii.

The Commissioner has declined to endorse the use of the GAF Scale, noting that the GAF Scale did not have a direct correlation to the severity requirements in the mental disorder Listings. *See* 65 Fed. Reg. 50746, 50764-65 (August 21, 2000).

The Eighth Circuit has rejected an argument that the ALJ's failure to discuss GAF scores requires reversal. *Wright v. Astrue*, 489 Fed.Appx. 148, 149 (8th Cir. 2012)(unpublished); *Jones*, 619 F.3d at 973-74 & n.4. At least at this juncture, there does not appear to be the uniformity of

---

[8] A GAF of 60 is not a particularly low score. A GAF of 51-60 reflects:
> **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers).

DSM-IV-TR 34.

criteria to judge the value of GAF scores. *See The Conceptual Evolution of DSM-5* 1\*\*-82 (Darrel Reiger et al. eds., 2011).

### 5. Consideration of Listing 112.04

Finally, Ms. Martin contends the ALJ erred in not finding that Claimant met or functionally equaled Listing 112.04 (Dkt. No. 7, at 8-11). She sets out the Listing in her Brief, but does not cite to the record in support of her argument. *Id.* Such a failure to cite to the record in support of an argument is waiver of the argument.

> [W]e see no reason to abandon the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.

*United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990), *cert. denied*, 494 U.S. 1082 (1992)(citations omitted); *accord United States v. Frausto*, 636 F.3d 992, 997 (8th Cir. 2011) (appellant waived issue by failing to make any supporting arguments on appeal); *Rotskoff v. Cooley*, 438 F.3d 852, 854-55 (8th Cir. 2006) (issue deemed abandoned when not developed in brief); *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting out of hand conclusory assertion that ALJ failed to consider whether claimant met Listings because claimant provided no analysis of relevant law or facts regarding Listings).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ. *See, e.g., Van Vickle v. Astrue*, 539 F.3d 825, 828 (8th Cir. 2008); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson*, 402 U.S. at 401; *see also Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error.

\* \* \*

THEREFORE, the Court hereby affirms the final determination of the Commissioner and dismisses Ms. Martin's complaint with prejudice.

IT IS SO ORDERED this 28th day of August, 2013.

_____
KRISTINE G. BAKER
UNITED STATES DISTRICT JUDGE